LUTHER H. CONKLIN, et al., Respondents, v. THE SECOND NATIONAL BANK OF OSWEGO, Appellant.

The certificate of stock in a national bank contained a provision that the stock was not transferrible until all the liabilities of the stockholder to the bank were paid.—*Held*, that such an agreement gave the bank no lien upon the stock for subsequent indebtedness of the stockholder, and was void as prohibited by the act of Congress (act of 1864, 13 U. S. Statutes, 99). The bank could only acquire an interest in its stock by a purchase, to prevent a loss upon a debt previously contracted in good faith—*Held*, also, that a debt due from the stockholder, arising from collections made by him for the bank, was a "loan" within the meaning of the act.

(Argued April 14th; decided June 6th, 1871.)

APPEAL from the judgment of the late General Term of the Supreme Court in the fifth judicial district, affirming a judgment in favor of the plaintiffs.

The Second National Bank of Oswego was incorporated under the national currency act, approved February 25th, 1863; their articles of association were dated January 15th, 1864, and their by-laws adopted March 22d, 1864. The certificates of stock issued to the plaintiffs' assignor stated in the body of the certificate: "This stock is not transferable until all liabilities of the stockholder to this bank are paid." This was a transcript of one of the by-laws of the institution. Mr. Chandler, the plaintiffs' assignor, was a stockholder in the bank; he was also a private banker at Mexico, in this State. In May, 1867, he made a general assignment to the plaintiffs for the benefit of his creditors. Under this assignment, the plaintiffs claim the stock in question. Chandler acted as the correspondent of the bank in his vicinity, in making collections, and they also made collections for him. Each also paid to the holders checks drawn on the other. The accounts arising from these mutual transactions were settled from time to time; no interest was allowed by either party to the other. At the time of the assignment, the balance due from him to the bank for moneys collected for them was about $4,000. For this they claim a lien upon the stock in question.

*John C. Churchill*, for the appellants. On the question of the validity of the by-law. (*Child* v. *Hudson's Bay Co.*, 2 P. Williams, 207; *Union Bk.* v. *Laird*, 2 Wheat., 390; *Mc-Dowell* v. *Bk. of Will.*, 1 Har. (Del.), 27; *Walsh's Assignees* v. *Bk. of N. A.*, 8 S. & R., 73; *Cunningham* v. *Ala. L. Ins. Co.*, 4 Ala., 652; Angell on Corp., 5 ed., § 355; 1 Geo., 43; 26 Conn., 144; 9 Missouri, 149.)

*Amasa J. Parker*, for the respondents. This court cannot look into the evidence to see whether other facts than those found by the judge may not be discovered. (*Mosher* v.

*Hotchkiss*, 3 Keyes, 161; *Farnam* v. *Hotchkiss*, 2 Keyes, 9; *Marco* v. *Liverpool Co.*, 35 N. Y., 664; *Colwell* v. *Lawrence*, 38 N. Y., 71; *Mason* v. *Lord*, 40 N. Y., 477; Code, §§ 267, 268, 272.) The by-law was void. (*Leggett* v. *Bk. of Sing Sing*, 24 N. Y., 283; *Bk. of Attica* v. *Manufacturers' Bk.*, 20 N. Y., 501; *In re Long Island Co.*, 19 Wend., 37.) The money advanced by the bank was a loan. (*Marine Bk.* v. *Fulton Bk.*, 9 Wallace, 252; *Tinkham* v. *Heyworth*, 31 Ill., 319; Morse on Banking, 19, 322; Bouvier's Law Dictionary, title, "Loan."

GROVER, J. The defendant, as appears by the case, was incorporated under the national currency act of 1863. Section 25 of that act provides that the banks shall have a lien upon the stock of each stockholder for all debts and liabilities from him to the bank unpaid, and no transfer of the stock of the bank shall be valid until all debts and liabilities of the stockholder making the transfer are paid, and this provision shall be inserted in substance in the certificates of stock issued by the bank. Section 21 provides that certificates of stock signed by the president and cashier may be issued to stockholders, and the certificates shall state on the face thereof that the stock is transferable only upon the books of the bank, and that when the stock is transferred, the certificate thereof shall be returned to the bank and canceled and new certificates issued. The certificates for stock issued by the defendant to the plaintiff's assignor, pursuant to the requirement of the twenty-fifth section, expressed on their face that the stock was not transferable until all liabilities of the stockholders to the bank were paid. It is entirely clear that, by the currency act of 1863, a lien was given, to all banks organized under it, upon the stock of each stockholder for all debts and liabilities to the banks. This lien did not arise from any by-law of the banks, but was given expressly by the statute authorizing the incorporation of this class of institutions. But the act of 1863 was repealed by the sixty-second section of the currency act of 1864, passed June 3d of that year. (13 U. S. Statutes at Large, 99.)

That section provides that the act entitled an act to provide
a national currency, etc., approved February 25th, 1863, is
hereby repealed; provided that such repeal shall not affect
any appointments made, acts done, or proceedings had, or the
organization, acts or proceedings of any association organized
or in the process of organization under the act aforesaid, and
provided also that all such associations, organized or in pro-
cess of organization, shall enjoy all the rights and privileges
granted, and be subject to all the duties, liabilities and
restrictions imposed by this act, and provided, further, that
the circulation issued or to be issued by such association shall
be considered as a part of the circulation provided for in this
act.    The intention of this section was to continue in exist-
ence all banks organized under the act of 1863, with
the same powers and privileges, and subject to all the
restrictions conferred and imposed upon those thereafter
organized under the act of 1864.    The provisions giving a
lien to a bank upon the stock of its stockholders for any debt
or liability of a stockholder to the banks and for expressing
such liability upon the face of the certificates issued to holders
of stock contained in the act of 1863, were not re-enacted
by the act of 1864.    The defendant cannot, therefore, sus-
tain the lien claimed upon the act of congress under which it
is incorporated.    Were there no restrictions imposed by the
act of 1864, upon banks acquiring liens upon its stocks for
the debts and liabilities of its stockholders to it, the only
question in the case would be, whether a lien in its favor was
created by the by-law enacted by its directors, declaring that
its stock should be subject to such lien.    But the act of
1864 does impose restrictions upon banks in this respect.
Section 35, 13th U. S. Statutes at Large, 110, provides that no
association shall make any loan, or discount on the security
of the shares of its own capital stock, nor be the purchaser
or holder of any such shares, unless such security or purchase
shall be necessary to prevent loss upon a debt previously con-
tracted in good faith, and stocks so purchased or acquired
shall, within six months from the time of its purchase, be sold

or disposed of at public or private sale, in default of which a receiver may be appointed to close up the business of the association according to the provisions of the act. It was held by the United States Supreme Court in *The First National Bank of South Bend*, plaintiff in error, v. *Lanier and al.*, defendants in error, that a pledge of his stock to the bank as a security for such money as the bank might deposit with a banking firm of which the stockholder was a member, was prohibited by -the above section, and therefore void. Justice DAVIS in giving the opinion of the court says : These institutions were created to subserve public purposes, and not the mere private interests of their stockholders, and in no better way could this object be attained, than by placing shareholders in their pecuniary dealings with the bank on the same footing with other customers. Besides, how could the capital of the bank be kept available for active use, if the shareholder, who had pledged his stock for borrowed money, should be unable to meet his obligation. To the extent of the debt, the capital would be withdrawn, and it is hardly possible that this could be the case for any length of time were the debt secured outside of the stock. The learned justice answers the argument of the plaintiff's counsel: That deposits are neither loans or discounts, and comes to the conclusion that they are loans within both the letter and spirit of the section, whether interest was agreed to be paid thereon or not. The question in the present case is not, upon principle, distinguishable from *The Bank of South Bend* v. *Lanier*. In the present case the plaintiff's assignor, who was a private banker, and the defendant, were the agents of each other for the collection of paper belonging to one against parties in the vicinity of the other, and for paying checks drawn upon the other presented by holders thereof. The course of business was that each credited the other in account for the money collected upon paper sent for collection, and charged such checks drawn upon the other as were paid. These accounts were, from time to time, settled, and any balance due paid by the debtor

party. The money collected upon paper remitted for that purpose, when credited in account by a banker, with the consent of the party owning the paper, becomes, to all intents and purposes, a deposit, and comes directly within the rule settled in *The Bank* v. *Lanier*. Besides, the construction put upon the section in that case, and the reasons assigned therefore, lead necessarily to the conclusion that all agreements by a stockholder, providing that the bank shall have a lien upon his stock for any liability thereafter created by him to the bank, are within section 35 of the act, and void. That the bank can only acquire an interest in its stock by an absolute purchase, to prevent a loss upon a debt previously contracted in good faith. When the statute has prohibited all express agreements between a bank and its stockholders for a lien in favor of the former upon the stock of the latter, to secure any debts or liabilities of the stockholders to the bank, that no such lien can be created by a mere by-law of the bank is too clear to require discussion.

The judgment appealed from must be affirmed, with costs.

All agreeing except Peckham, J., who does not vote.

Judgment affirmed.