NICOLLET NATIONAL BANK OF MINNEAPOLIS *vs.* CITY BANK.

December 27, 1887.

**Statute Adopted from Another State—Construction.**—The legislature having borrowed from another state, and adopted into our law, a statute which had been judicially construed in such state, a presumption arises, of greater or less force according to the circumstances, that the legislature intended to adopt the statute with that settled construction.

**Bank—Lien upon Stock for Loan to Stockholder.**—The act of 1881, prohibiting any bank, organized under the laws of this state, from making loans or discounts on the security of the shares of its capital stock, is effectual to prevent a bank from having a lien on the shares of a stockholder for a debt thus created subsequent to that enactment, although a by-law adopted prior to that statute had provided for such a lien.

**Transfer of Stock—Equitable Assignment.**—Although the shares of such stock were made transferable only on the books of the bank, an assignment of the same, without such transfer, will invest the assignee with an equitable title, which will be protected as against all parties not showing a superior right.

**Same — Refusal of Corporation to make Transfer — Damages.**—Such an assignment by the stockholder, for the purpose of collateral security, is effectual as against the bank, asserting a lien for a debt of the

stockholder, (contrary to the statute of 1881;) and its refusal, because of such asserted lien, to make the proper transfer on its books, renders it liable to the assignee in an action for damages as for the conversion of the stock.

**Same — Attachment with Notice of Assignment. —** An attachment of the shares by the bank, after notice of the assignment, is ineffectual to defeat the prior right of the assignee.

Plaintiff brought this action in the district court for Hennepin county, to recover damages for the refusal of the defendant to make a transfer of stock upon its books. A jury was waived, and the action tried by *Hicks,* J., who ordered judgment for plaintiff for the value of the stock, from which judgment the defendant appeals.

*Smith & Reed,* for appellant.

*Woods, Hahn & Kingman,* for respondent.

DICKINSON, J. The defendant, a banking corporation created under the laws of this state, adopted a by-law in 1872, embracing the provisions that no transfer of the stock should be made, without the consent of the directors, by any stockholder who should be liable to the bank, either as principal debtor or otherwise, and that stock should be assignable only on the books of the bank. In 1884, the defendant bank issued to one Kelley stock certificates, which bore upon their face the statement that the stock was transferable only on the books of the bank, and that it was not transferable by any stockholder liable to the bank as principal debtor or otherwise, without consent of the board of directors. In 1886, Kelley, who was then indebted to the defendant bank, without the consent of the defendant's directors, assigned and delivered to the plaintiff his stock certificates as security for a debt then contracted. This debt being still unpaid, the plaintiff notified the defendant of the indebtedness and assignment. After this the defendant, in an action against Kelley upon his indebtedness, attached the interest of Kelley in this stock; after which the plaintiff, producing to the defendant, and offering to surrender, the stock certificates, demanded that the proper transfer be made on the books of the bank, which was refused. This action was then commenced to recover the value of the stock.

The defendant asserts a lien upon the stock for the indebtedness of

Kelley, and claims that whatever rights the plaintiff acquired by the assignment or pledge were subject to that lien. It is asserted that the by-law, in terms charging the stock with a lien in such cases, was authorized by the statute in force at the time the by-law was adopted. This law (Gen. St. 1878, *c.* 33, § 14) was as follows: "The shares in such bank are personal property, and transferable on the books of the bank in such manner as may be agreed upon in the articles organizing such bank, or prescribed in its by-laws; and every person becoming a stockholder therein shall, in proportion to his interest, succeed to all the rights, and be subject to all the liabilities, of prior stockholders." In view of the construction and effect which must be given to a later enactment,—Laws 1881, *c.* 77,—which was passed before the issuing of this stock to Kelley, we deem it unnecessary to determine what, independently of this later act, might have been the force of the earlier statute and of the by-law referred to.

By the act of 1881 a new section was added to the prior banking law, designated section 48, which is: "No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith; and stock so purchased or acquired shall, within six (6) months from the time of its purchase, be sold or disposed of at public or private sale." This is an exact transcript from section 35 of the national banking act of June 3, 1864, (13 U. S. St. at Large, 110; U. S. Rev. St. § 5201,) and was undoubtedly intended to be, as it is, a copy of that part of the congressional act. More than 10 years before we thus incorporated this provision in our statute, the federal statute had been authoritatively construed by the supreme court of the United States in *Bank* v. *Lanier,* 11 Wall. 369. It was there held that a pledge of stock to a bank by a stockholder, as security for obligations in the nature of a debt, was a violation of the 35th section of the act of 1864. It was also considered by the court that the claim of the bank of a lien upon the stock, apart from any special agreement, was also opposed to the law of 1864, although a by-law, authorized by the act of 1863 under which the bank had been organized, (but which was repealed by the act of 1864,) provided

for such a lien.    Again, in 1873, in *Bullard* v. *Bank*, 18 Wall. 589, it was decided, following *Bank* v. *Lanier*, that a national bank, organized under the act of 1864, could not acquire a valid lien upon the shares of its stockholders for money loaned, even by express provision therefor in its articles of association and its by-laws.    This, as the opinion shows, was deemed to be within the prohibition of the 35th section of the act.    In 1871 and 1874 the courts of New York, Maine, and Kentucky were called upon to follow these decisions of the supreme court of the United States as to the effect of section 35 of the act of 1864.    *Conklin* v. *Second Nat. Bank*, 45 N. Y. 655; *Hagar* v. *Union Nat. Bank*, 63 Me. 509; *Second Nat. Bank* v. *Nat. State Bank*, 10 Bush, 367.    It is further to be noted that section 12 of the congressional act of 1864 contains, in substance, the same provisions as section 14 of our General Statutes above recited, and upon which the defendant places some reliance.

It is a well-recognized principle that where a statute, the construction of which has been judicially determined, has been adopted into the statute law of another state, a presumption arises, which, however should be considered in connection with other principles of construction, that the legislature adopted the statute with that settled construction.    *In re St. Paul & N. P. Ry. Co.*, 37 Minn. 164, (33 N. W. Rep. 701;) Cooley, Const. Lim. 52, and cases cited.    There is no reason in the circumstances of this case to oppose the applicability of this rule of construction, or to weaken its force.    But even without regard to this, it seems to us impossible to place any other construction upon the act of 1881 than that which gives to it the effect of prohibiting a bank from loaning money to a stockholder upon the security of its own capital stock.    To make such a loan, upon an express agreement that the stock should be held as security, would be. plainly opposed to the statute.    In the absence of such a special agreement, it would be equally opposed to the letter and spirit of the act, that the bank should have a lien upon the stock, as security for such a loan, by force of any by-law adopted by it, or by legal implication.

It was within the power of the legislature, by general law, to declare such a prohibition, which should be effectual as to future trans-

actions, notwithstanding any regulation or by-law of the corporation to the contrary. The matter in question is one of public concern, affecting the permanent solvency of banking corporations, created as well to subserve public interests as for the benefit of the members, (Bank v. Lanier, supra;) and the manner in which they may conduct their business is not beyond such legislative control as may be necessary for the protection of the public. The by-law alone was ineffectual to oppose proper legislative control, by general law, and as to future transactions. To justify construing a statute for the creation of corporations as authorizing the adoption of by-laws of such a nature as to place the control of matters of public concern wholly within the power of the corporation, and excluding the future exercise of ordinary legislative functions, would, at least, require language admitting of no other reasonable meaning. The provision in section 14 of the statute above recited, authorizing corporations to prescribe by by-law the manner of transferring stock, does not involve any such bargaining away or self-deprivation of legislative authority.

The assignment to the plaintiff, without a transfer on the books of the bank, did not constitute a complete transfer in merely legal contemplation, so as to effect an actual substitution of shareholders binding upon the corporation. But, as between the immediate parties to the transaction, the assignment was effectual, and would be recognized and enforced, at least in equity, as against all parties not showing a superior right. Baldwin v. Canfield, 26 Minn. 43, (1 N. W. Rep. 261;) Black v. Zacharie, 3 How. 483, 513; Broadway Bank v. McElrath, 13 N. J. Eq. 24; Dickinson v. Central Nat. Bank, 129 Mass. 279; Cushman v. Thayer Mfg. Co., 76 N. Y. 365. The asserted lien of the defendant upon the stock, being illegal, did not oppose the acquisition by the plaintiff of the rights here asserted.

The prior claim of the plaintiff must be allowed to prevail over the attachment of the defendant, the latter having actual notice of the facts. 1 Mor. Corp. (2d Ed.) §§ 196–199, and cases cited; Jones, Pledges, 179. What would be the result if there had been no such notice it is unnecessary to consider.

Although the assignment to the plaintiff was for the purpose of collateral security, the plaintiff was entitled to have the same entered

on the books of the bank.    Cook, Stocks, § 466, and cases cited;
Coleb. Coll. Secur. § 273.

The refusal of the defendant to make the proper entry on its books,
upon an unjustifiable assertion of a superior lien upon the stock in
its own favor, subjected it to liability in an action for damages, and
under such circumstances the value of the stock affords the measure
of the recovery.    1 Mor. Corp. § 217; Cook, Stocks, §§ 576, 581;
*Kortright* v. *Buffalo Commercial Bank*, 20 Wend. 91, and 22 Wend.
348, (34 Am. Dec. 317;) *Blanchard* v. *Dedham Gas-Light Co.*, 12
Gray, 213; *Sargent* v. *Franklin Ins. Co.*, 8 Pick. 90, (19 Am. Dec.
306;) *Wyman* v. *Am. Powder Co.*, 8 Cush. 168; *Pinkerton* v. *Railroad*,
42 N. H. 424; *Building Ass'n* v. *Sendmeyer*, 50 Pa. St. 67; *Baltimore,
etc., Ry. Co.* v. *Sewell*, 35 Md. 238; *Bank of America* v. *McNeil*, 10
Bush, 54; *McMurrich* v. *Bond Head Harbour Co.*, 9 U. C. Q. B. 333.
See, also, *Baker* v. *Marshall*, 15 Minn. 136, (177.)

The rights of the plaintiff in making the pledged securities avail-
able were not confined to a sale of the stock, incumbered as it was by
the refusal of the bank to complete the transfer to the plaintiff.

Judgment affirmed.